# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

B. D. BEAMER AND R. P. CALDWELL V. FIRST NATIONAL BANK
OF GALAX

AND

McC. HIGGINS AND B. D. BEAMER V. FIRST NATIONAL BANK
OF GALAX.

April 10, 1939.

Record Nos. 2056, 2057.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Browning and Spratley, JJ.

400

The opinion states the case.

*Horace Sutherland* and *Jones & Woodward,* for the plaintiffs in error.

*S. B. Campbell,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

These actions were instituted in the lower court upon two bonds both payable to the First National Bank of Galax, one for $2,750 made by McC. Higgins and B. D. Beamer, and the other for $4,000 made by R. P. Caldwell and B. D. Beamer. Separate actions were brought against the makers of the bonds and the cases being identical except as to the amount of the bonds and the makers, they were heard together in the lower court. They were, likewise, heard contemporaneously in this court. The cases in the lower court resulted in judgments against the makers and in favor of the First National Bank for the full amount of the bonds. Those judgments are now challenged upon grounds to be set forth and discussed later.

In the town of Galax there were two banks, the Peoples State Bank and the First National Bank of Galax. On June 24, 1933, the Peoples State Bank was in financial distress. It was necessary for it to secure financial assistance or be placed in the hands of a receiver. Its condition was such that a state of emergency existed and quick action was necessary in order to prevent its closing. The First National Bank agreed to take over all of the assets of the Peoples State Bank and to be responsible, except to the shareholders, for all of its obligations, including the payment to all depositors. The agreement was in writing and the merger was effectuated with the aid and assistance of a federal bank examiner.

The assets were classified by a committee appointed from the directorate of each bank and the federal bank examiner. The report of this committee disclosed that there were ac-

ceptable notes of $201,260.01, and these were taken over by the First National Bank without recourse at face value as its absolute property. Credit for this amount was given the Peoples State Bank and these notes are not involved here. There were slow notes of $77,068.46, doubtful notes of $53,276.52 and notes regarded as a total loss of $28,-165.29, aggregating $158,510.27. These were also taken over but as collateral with a corporate note of Peoples State Bank. The Peoples State Bank could not meet current demands and obligations at the time of the merger.

The original contract was authorized by a resolution of the directors of the Peoples State Bank at a meeting which was attended by the makers of the bonds against whom these actions were brought. It was held on June 24, 1933, and on that date the contract was executed. The preamble of the contract follows:

"That, whereas, the party of the first part finds itself embarrassed in meeting its current demands and obligations, by reason of its inability to realize the necessary funds on its assets, and is desirous of effecting an agreement by which its depositors may be paid without delay and without the cost and inconvenience of a receivership; and

"Whereas, the party of the second part, in order to avoid the financial distress and inconvenience to the said depositors in the said The Peoples State Bank, and to promote the business interests of the entire community, has agreed, provided it is fully indemnified, and upon certain stipulations hereinafter specified, to assume all liabilities as shown by the books as of June 24, 1933, except those to shareholders, and pay off the depositors of the party of the first part as hereinafter shown."

This contract provided that, in addition to the assets turned over to the First National Bank contemporaneously with the execution of the contract to further indemnify the First National Bank from any loss by reason of the liabilities assumed by it, the directors of the Peoples State Bank were to execute and deliver to the First National Bank bonds aggregating $35,000. These bonds were to become

due and payable in the event the assets transferred were not sufficient to pay all of the liabilities assumed by the First National Bank.

The directors of the Peoples State Bank, by resolution also participated in by the defendants McC. Higgins, Caldwell and Beamer, authorized the execution of another agreement in the nature of a supplemental contract to fully carry out and effectuate the intention of the parties. This agreement was reduced to writing and also executed on June 24, 1933. It follows:

"Whereas: A certain collateral corporate note is being given by The Peoples State Bank of Galax to the First National Bank of Galax, with certain assets of The Peoples State Bank of Galax, pledged as collateral thereto, and in addition thereto the Directors and other interested parties of The Peoples State Bank of Galax, have given to the First National Bank of Galax, their bonds in the penalty of $35,-000.00, to guarantee the First National Bank of Galax, against any loss as specified in said bonds; and,

"Whereas: It appears that interest on savings and time deposits and unearned interest on notes and the exact status of the Trust Department in The Peoples State Bank of Galax, cannot now be definitely ascertained.

"Therefore, for and in consideration of the premises and matters and things set out herein, the parties of the first part do hereby agree that any errors found in the setting up of the assets and liabilities of The Peoples State Bank on the books of the First National Bank of Galax, in said interest accrued on time and savings deposits and unearned interest on bills receivable and any errors that should appear in said Trust Department, are to be adjusted and arranged in the following manner:

"1. Out of the collections of the said assets pledged as collateral to said collateral corporate note.

"2. From the said bonds totaling $35,000.00 given by the directors and other interested parties of The Peoples State Bank to guarantee the First National Bank of Galax, against any losses. And the Peoples State Bank, Galax, as well as

said parties signing this memorandum personally, with said collateral aforesaid and said bonds of $35,000.00 aforesaid agrees that said collateral and bonds aforesaid are not only to save the First National Bank of Galax harmless against any loss on said collateral corporate note, but also against any losses by reason of accrued interest on savings and time deposits and unearned interest on bills receivable and any errors for which the First National Bank, Galax, would be liable as declared by its Board of Directors, in the Trust Department of said Bank, and when any error appears for which there is additional liability on any of said items, and so declared by the Board of Directors of the First National Bank of Galax, it is then and there to be corrected on the books of the said First National Bank of Galax.

"In witness whereof the Board of Directors 'of The Peoples State Bank of Galax, have caused this memorandum and contract to be executed in its name, by its President and Cashier, and other parties signing the same execute in their individual capacity, the day, month and year first herein written."

It is to be noted that the plaintiffs in error signed this contract along with the other directors.

The collateral note referred to was executed on behalf of the Peoples State Bank on June 24, 1933, payable on demand, and all of its assets, other than the acceptable notes of $201,260.01, which had been taken over by the First National Bank as its own property at face value, were placed with it as collateral. This collateral note was in the sum of $122,058.47, and was authorized by the supplemental agreement and by express resolution of the directors of the Peoples State Bank on June 24, 1933. This resolution was also participated in by the defendants in the lower court, the plaintiffs in error here.

These actions were brought upon two of the bonds which were included in the $35,000, and which were executed and delivered by the directors of the Peoples State Bank to save the First National Bank from loss by reason of its assump-

tion of the liabilities of the Peoples State Bank. The bonds of the other directors given for that purpose have been paid and properly credited. The condition of the two bonds here involved is as follows:

"The condition of the above obligation is such that, whereas: The Peoples State Bank of Galax, Virginia, has this day entered into a written agreement, the conditions of which are known to me, and which agreement is hereby referred to and approved by me, so far as I am concerned, by the terms of which the First National Bank of Galax, assumes the liabilities of The Peoples State Bank of Galax, as shown by the books as of close of business June 24, 1933, except the liabilities to the shareholders, which it does not assume, and in consideration thereof, The Peoples State Bank of Galax, transferred and assigned to the First National Bank of Galax, all of its assets of whatever character and description, and further undertook and bound itself to have executed and delivered to the First National Bank of Galax, a bond executed by the undersigned, conditioned to protect and indemnify the First National Bank of Galax, against any and all loss that might be incurred by reason of the First National Bank of Galax, accepting a certain collateral corporate note executed to said First National Bank of Galax, by the Peoples State Bank of Galax, made in connection with the settlement under said contract aforesaid; and

"Whereas, It is one of the requirements in said settlement under said contract, that in the event the assets of The Peoples State Bank of Galax, that are used as collateral to said corporate note, shall not be sufficient to pay said corporate note and the interest thereon of 5% annum, then and in such case the First National Bank of Galax shall and does have the right to collect this bond so far as may be necessary to cover the loss or losses sustained by reason of their acceptance of said collateral corporate note aforesaid, or any renewals thereof;

"Now, therefore, if the said assets of The Peoples State Bank of Galax, pledged as collateral to said corporate note

aforesaid, shall be sufficient to pay off and discharge said collateral corporate note and the interest thereon, as aforesaid, then and by virtue of said contract and settlement and the said First National Bank of Galax, shall not suffer any loss or damage by reason of said collateral corporate note aforesaid, and any renewals thereof, and the directors of the First National Bank of Galax, shall so declare, then this obligation shall be null and void, otherwise to remain in full force and effect for the protection of said First National Bank of Galax, for such losses on said collateral corporate note aforesaid."

On June 22, 1936, after advertisement in accordance with the terms of the collateral note, the collateral was sold at public auction and the First National Bank became the purchaser at the sum of $35,000, that being the highest bid.

The evidence discloses that the First National Bank paid all of the liabilities of the Peoples State Bank which it had assumed under the contracts. It further shows that as of March 3, 1937, two days before these actions were instituted there was a balance due on the collateral note of $38,215.22 with interest. This balance was arrived at after crediting the note with the sum realized from the bonds of the other directors and sums received from all sources. Therefore, if the bonds here involved are collected there still will be a balance due on the collateral note of considerably more than $30,000 with interest.

The evidence also discloses that notes amounting to $84,-678.35 placed as collateral with the collateral note of $122,-058.47 were entirely worthless.

Counsel for the First National Bank in the trial court declared that, notwithstanding its purchase of the collateral at the sale, if more than a sufficient amount was collected than was necessary to pay off the collateral note, then the First National Bank was willing to turn back to the Peoples State Bank the excess. The First National Bank also offered to execute such assurance to carry this offer into effect as might be necessary. It also agreed that the court

could embrace the proposition in a court order. Counsel for the defendants refused these offers.

At the bar of this court substantially the same offer was made by counsel for the First National Bank. He stated that his client simply wanted to be made whole and wanted no profit from the merger. This was refused by counsel for the defendants below, plaintiffs in error here.

■ The principal defense to the actions is that the First National Bank did not exercise due diligence in the collection of the collateral securities placed with the collateral note. This was a requirement of the original contract. It is also charged that the burden of proving the exercise of due diligence was upon the First National Bank. The burden of proof as to the issue is not material here because in any view of the case all of the evidence discloses that due diligence was exercised by the First National Bank. Through its officers and agents it gave attention to every item of collateral. Reports of the progress or lack of progress made was frequently given to the directors of the Peoples State Bank and the plaintiffs in error also had knowledge of what was being done and approved it. The evidence is uncontradicted that everything was done to enforce the collection of the collateral and as collections were made they were properly credited. Notwithstanding the efforts made to collect, there remained notes in the amount of $84,000 which were worthless. In addition to the foregoing a joint meeting of the board of directors was held on May 14, 1935, and a resolution was passed in which it was expressly declared "that all parties are satisfied with the efforts being made in completing this work, and that due diligence is being used in connection with it." There is an abundance of other evidence in the record which sustains the conclusion that due diligence was used in collecting the collateral but what we have adverted to is sufficient.

■■ The plaintiffs in error advance the argument that inasmuch as the original contract did not provide for the execution of the collateral note it had no legal existence; therefore, it could not be relied upon as a basis for the sale

of the collateral and the purchase of it by the First National Bank. This argument ignores the resolution of the Peoples State Bank, passed by its board of directors on the same day the original contract was made, in which the note was expressly authorized; and it also ignores one of the provisions in the bonds now being proceeded upon in which it was stated that the note was being given. Furthermore, the note was made for the benefit of the Peoples State Bank and it does not and could not complain of it, and the plaintiffs in error who made the bonds have therefore no valid reason to object.

It is contended that inasmuch as the original contract called for a settlement of the affairs within three years and no settlement had been made, the right to proceed on the bonds has not accrued.

As the collateral was collected by the First National Bank it was applied as a credit on the collateral note. Reports of the progress made, as we have already stated, were made to the directors of the Peoples State Bank. So far as the plaintiffs in error are concerned, the only settlement they were entitled to was such as would show whether the First National Bank had sustained a loss by reason of assuming the obligation of the Peoples State Bank. This was properly shown and the loss established.

Next it was contended that the collateral note should not have borne interest because it was not provided for in the original contract. There is no merit in this contention for the very bonds here proceeded upon contain a provision in which recognition is made of the collateral note and that it bears interest at five per cent.

The plaintiffs in error complain of the refusal of the court to admit in evidence certain reports and financial statements made by bank examiners pertaining to the condition of the Peoples State Bank. We do not think these were material. As matters have finally terminated, it has been conclusively demonstrated that the Peoples State Bank was insolvent, and it is undenied that the right had accrued to call upon the bond-makers, among whom were the plain-

tiffs in error, to make good the loss which it has been shown the First National Bank sustained, and which far exceeds the amount of the bonds. No examiner's report or statement made prior to the time the assets were taken over would be of any probative value. Here the only material issue is whether the First National Bank suffered a loss of more than $35,000 by reason of the transaction. If it did, then it was entitled to recover on the bonds. All of the evidence shows that even after the full amount of the bonds of $35,000 is paid there will still be a loss of more than $30,000.

There are other points made but we deem it unnecessary to discuss them. The original contract, the supplementary agreement, the bonds and the collateral note were all authorized and executed upon the same day. They constitute the agreement that existed between the two banks and the makers of the bonds. The sale of the collateral was had after due advertisement and ample opportunity was afforded all interested to appear and protect their interest. The plaintiffs in error had knowledge of the sale and one of them actually had his agent present at the sale. The advertisement was made upon the direction of the directors of both banks and personal notice was sent to all interested. It was a fair sale and the evidence conclusively shows that the collateral brought a fair price. The evidence also shows that after the amount realized had been credited on the note and after all other proper credits made, including the full amount of the bonds, there remained a balance on the note of more than $30,000, which represents the loss sustained by the First National Bank. Therefore, under no theory or reason should it be denied its right to recover on these bonds.

Aside from the correctness of our ruling on the assignments of error, there remains the outstanding fact established by uncontradicted evidence that under any circumstances the assets of the Peoples State Bank lacked more than $35,000, the amount of all the indemnity bonds, of paying the difference between the obligation assumed by the First National Bank and the assets delivered to it by the Peoples State Bank. The bonds were given for the express

purpose of protecting the First National Bank against this loss. The established facts render the plaintiffs in error liable on their bonds regardless of any non-prejudicial error which might have been committed upon the trial. Under no proper theory of the case can the plaintiffs in error prevail upon the record before us.

Numerous authorities are cited and relied upon by the plaintiffs in error, among them the recent case of *American National Bank* v. *Ames,* 169 Va. 711, 194 S. E. 784. We have considered that case along with the others relied upon and find that they are not controlling here. The *Ames Case* is so entirely different from a factual standpoint that it has no application.

The judgments are affirmed.

*Affirmed.*